IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-03114-01-CR-S-DGK |
| | ) | |
| MEAGAN N. BOWMAN # 2917452 | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR DEPARTURE/VARIANCE**
**DEFENDANT'S SENTENCING MEMORANDUM**

**I.**

**DEFENDANT FACES POSSIBLE CONSECUTIVE PUNISHMENT**

Defendant Bowman has entered a plea of guilty to a three (3) count Indictment involving (Count I) the knowing employment use for the purpose of producing a visual depiction on a computer involving interstate commerce (involving child number 1); (Count II) is an identical charge but with a different minor, (child number 2); (Count III) alleges the materials were mailed, shipped and transported by means of a computer and interstate commerce (involving child number 1); (Count IV) is identical to (Count III) (except involving child number 2).

The allegations occurred between November 1st, 2011, and May 19th, 2012.

Defendant is also charged by Felony Information in Christian County Circuit Court on a two count charge, Christian County Case No. 12CT-CR00776-01 which was filed <u>before</u> the federal charges were filed. (See paragraph 48, pg. 8 of Pre-Sentence Investigation) Bowman is charged with creating child pornography by photographing the private parts of Jane Doe 1 (child number 1); Count II alleges felony exploitation of a minor in that on May 2th, 2012, defendant did intend to deliver obscene material.

1

The State statutory violation in Count I of the State charge, a class A felony, RSMo. 573.023 punishes defendant Bowman with between ten (10) to thirty (30) years or life imprisonment.

The state and federal charges, read together, are nearly identical, the only difference being that the federal charge alleges in the case-at-bar interstate commerce, whereas the State court charge does not use the same words, but the allegations are clearly intended.

The only other difference is that the dates involved in the federal charges (from November 1st, 2011, to May 19th, 2012) whereas the State court charges allege on or about May 20th, 2012, but relates back to events that occurred about "two months ago".

Defendant Bowman cooperated, gave three statements to Christian County law enforcement officers, and the sum total of the statements indicate the activity had been occurring for months, and involved computers, emails, and Craig's List matters involved in interstate commerce.

Read as a whole, the Christian County charges, filed before the federal charges, overlap and if the defendant Bowman pled guilty or was found guilty of the State court charges, the punishment of the acts would concern the exact same time and place as alleged in the federal charges and could be consecutive.

Defendant should be considered and afforded double jeopardy protection against "successive punishments", *Blockberger v. U.S.*, 284 U.S. 299, and the Fifth Amendment United States Constitution which protects a person who shall not be subject to the same offense or be put twice in jeopardy of life and limb. *Benton v. Maryland,* 395 U.S. 784 (1969), and Constitution of Missouri, Article I, Section 19 (1945), and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

The Court is requested to consider these nearly identical "directly related"[1] prosecutions and the total range of punishment, and take the State court prosecution into consideration in assessing a sentence herein.

## II.

### DEFENDANT'S DIMINISHED CAPACITY

Defendant was given a psychological evaluation under 18 U.S.C., Section 424(b) originally requested by the Federal Public Defender's Office, by Dr. Kent W. Franks. Counsel believes the 26 page report dated September 3rd, 2014, has been forwarded to Plaintiff's counsel as well as the Court.

The diagnostic impression of Dr. Franks was that defendant Bowman suffers from "major depressive disorder, single episode, moderate to severe, with post-partum onset (in remission)"; "sexual abuse of a child"; "personally disorder NOS with narcissistic and dependent features".

A second and subsequent report consisting of 9 pages, dated January 31st, 2015, by Dr. Evelyn M. Darrow also concludes with a diagnosis of major depressive disorder, recurrent; impulse control disorder; parent child relational problems; sexual abuse of a child; alcohol abuse and cannabis abuse (by history); sexual paraphilia; personality disorder NOS with borderline, dependent and obsessive-compulsive traits.

A copy of this report has been afforded government's counsel as well as the Court.

18 U.S.C, Section 3553 requires the Court to impose a sentence sufficient, but not greater than necessary, taking into account the seriousness of the offense, promoting respect for the law and providing for a just punishment. The defendant may be considered for needed medical care and other "correctional treatment" in the most effective manner, 18 U.S.C., Section 3553(a)(D).

---

[1] Paragraph 48, pg. 8, Pre-Sentence Investigation.

Specifically regarding child crimes and sexual offenses, the Court may consider mitigating circumstances of a kind and to a degree that has not been taken into consideration by the sentencing commission, 18 U.S.C., Section 3553(b)(A)(ii)(II)(III) or that might result in a sentence different from that described in the Guidelines.

18 U.S.C., Section 3553(a) lists the factors for the Court to consider and determine in imposing a particular sentence which includes the "history and characteristics of the defendant", 18 U.S.C., Section 3553(a)(1) as well as the other factors listed providing for a just punishment, adequate deterrents, protection of the public and providing the defendant with needed medical and correctional treatment (18 U.S.C, Sec. 3553(a)(2)(A)(B)(C)(D).

Defendant clearly suffers from diminished capacity.

## III.

**DEFENDANT BOWMAN WOULD BENEFIT AND RESPOND TO TREATMENT**

The Federal Sentencing Guidelines, Section 5H1.3 concern the defendants' "mental and emotional conditions".

A defendant's mental or emotional condition "may be relevant" in determining whether a departure is warranted and if such conditions exist, either individually or in combination with other characteristics-if present to an unusual degree which might distinguish the case from the typical case, a downward departure may be appropriate to accomplish a specific treatment purpose.

Mental and emotional conditions may be relevant in determining the conditions of probation or supervised release as well. Section 5B1.3(d)(5); and Section 5D1.3(d)(5).

The defendant's physical condition including drug or alcohol dependence may also be relevant, U.S. Sentencing Guidelines 5H1.4, if considered in combination with other offender characteristics.

4

The defendant's "risk can be further reduced with supervision and treatment", page 24, report of Dr. Kent W. Franks, and her risk of sexual re-offense is very low.  And, defendant Bowman is an individual ". . . who would benefit significantly from individual psychotherapy.", Dr. Evelyn Darrow, page 9.

## IV.

## THE GUIDELINES ARE UNREASONABLE AS IT RELATES TO DEFENDANT BOWMAN

Much like some drug guidelines, formulated by directives from Congress rather than by empirical data, sentencing courts are questioning the reasonableness of child pornography guidelines.  The guidelines for instance, do not distinguish <u>differing levels of culpability</u>.  And nearly all the enhancements apply to all child pornography offenders.[2]

Enhancements combine to reflect an effective base level of 43 with a sentence of 1200 months.  Guidelines often result in higher sentences for possessing child pornography then for actually abuse of a child. *United States vs. Dorvee,* 616 F3rd 174, 187 (2nd Cir. 2010).

Thus there is an unwarranted disparity as it is unwarranted similarly, such that dissimilarly situated offenders are treated similarly.[3]

Even after a downward departure or variance, a resulting sentence could still be far too onerous and otherwise inconsistent with the principal of parsimony, <u>18 USC Sec. 3553 (a)</u>.

It is the degree of the variance and not the variance per se that is relevant for purposes of <u>18 U.S.C Sec. 3553 (a).</u>

---

[2] U.S. Sentencing Commission, *The History of the Child Pornography Guidelines* (2009. (54 pages) (Exhibit One)
[3] "Overview", (7 pages) (provided by defense counsel) (Exhibit Two).

5

Child pornography offenders are punished far beyond incarceration. They suffer more collateral consequences than other offenders such as being restricted to where they can live, work and even whether they can visit family members for the rest of their lives.

Defendant has no prior history of harming her children and has zero criminal history.

The best empirical research shows that the vast majority of such offenders do not go on to molest children.[4] Seventy-two (72) individuals were followed for four (4) years after they were charged with or convicted with child pornography plus another 231 child pornographer offenders were followed for six (6) years after their initial offense without any prior contact offenses. Only two (2) of these individuals (0.8 %) committed a contact offense.[5]

In a recent study, Dr. Richard Wollert followed 231 child pornography offenders without prior contact offenses for six years after their initial offense. Only two of these people (0.8%) committed a contact offense. (See attached Exhibit One)

But, the average sentence length for first-time child pornography offenders is now over three times what it was for both full-time and recidivist offenses in 1994. The average guideline sentence for possession currently is 119 months or nearly ten years.[6]

Defendant Bowman is of a category of offenders that are unlikely to reoffend.[7]

There have been numerous increases in guidelines for child pornography offenses and as a result the average sentence for first time child pornography offenses is over three times what it was for offenders in 1994.[8]

---

[4] Dr. Richard Wollert, USSC Public Hearing, February 15, 2012; also see "*The Implications of Recidivisms Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders: Public Hearing on Child Pornography Offenses Before the U.S. Sentencing Commission*, February 15, 2012; (the 27 page report is attached hereto), (Exhibit Three) (27 pages).
[5] *Nine BNC Psychiatry 43*, Jerome Endrass etal (2009)
[6] U.S. Sentencing Commission, 2011 Source Book on Federal Sentencing Statistics (tdl. 13).
[7] Synopsis of The Sentencing Project (and the actual report) are attached (Exhibit Four).
[8] US Sentencing Commission, *2011 Source Book of Federal Sentencing Statistics*, (TBL.13)

The actual sentences imposed reflect growing displeasure with the guidelines. One quarterly report in 2012 reflects that judge impose sentences below the guidelines 45% of the time.[9]

It is apparent that federal courts are not following the guidelines in child pornography cases. A survey from January 2010 to March 2010 revealed that 70% opined that the guidelines for possession of child porn were too high (See *U.S. Sentencing Commission Results of Survey of United District Judges January 2010-March 2010* available at http://tinyurl.com/7uz7wob. The first quarter report in 2012 reflects that judges impose sentences below the guidelines 46% of the time in 2011 (available at http://tinyurl.com/cevaxeg).

With only about one-third of child porn offenders sentenced with the guidelines, when compared to other major offenses categories, the judiciary practices what it has been preaching, i.e. that the guidelines are too onerous.

Nongovernment-sponsored below-guideline sentences imposed for child porn offenses consistently have the highest rate of variance for the bottom of the otherwise applicable guideline range, but also to such a degree of variance that are also increasing.[10]

## V.

## THIS COURT IS REQUESTED TO CONSIDER STATE
## SENTENCING GUIDELINES

State courts are not precluded from considering state sentencing guideline practices, *U.S. vs. Clark*, 434 F3rd 684, 688 (4th Cir. 2006). The State of Missouri has charged two class A felonies, carrying a minimum ten years (to life imprisonment). In *U.S. v. Ringgold*, 571 F2d 948,

---

[9] US Sentencing Commission, *Preliminary Quarterly Data Reports, TBL.3*, (2012).
[10] By Tess Lopez, Mark H. Allenbaugh, Alan Ellis, "Trends and Practice Tips for Representing Child Pornography Offenders at Sentencing," *Criminal Justice*, Vol. 27, No. 3 (Fall 2012), American Bar Association.

7

952 (9th Cir. 2009), courts are not precluded from considering state sentencing practices. *U.S. v. Clark*, 434 F.3d 684, 688 (4th Cir. 2006), in order to "avoid unwarranted sentence disparities", 18 USC Sec. 3553(a)(6). On a first offense charge, even with a moderately good offender risk score" and offender would serve between 40-45% of the sentence.

Missouri Sentencing Guidelines are not nearly as stringent as the federal guidelines. State courts allow for short term and long term sexual treatment sentences of four months to two years.

## **VI.**

## **CHILD PORNOGRAPHY DEFENDANTS REQUIRE LESS INCARCERATION AND LONGER SUPERVISION[11]**

Defendant would be closely monitored on probation and her freedom greatly restricted.

The U.S. Probation Office utilizes myriad tools to protect the community, including search and seizure of the offenders' residences, computers and phones, restrictions on computer use, and compliance with treatment.

Since defendant would be required to register as a sex offender, local law enforcement would be alerted to monitor his actions closely, which would be focusing more on counseling, treatment, prevention, monitoring, and supervision—and less on imprisonment.

Although some sex offenders could receive a lifetime of supervised release, USSG §5D1.2(b) it is not required by law and the length of supervised release should be tailored to the characteristics of the defendant.

A public hearing with invited guests was conducted in February, 2012, concerning penalties of child pornography offenses. There was a three-year review of the issue and the report was released by the end of 2012. (See attached Exhibit Three) (eight pages) (Condensed

---

[11] See attached "The Sentencing Project", by Dr. Valerie Wright. (Exhibit Two) (12 pages).

version but actual quotes). The proposed changes are focusing less on the number of images and more on actual conduct. Possessors are essentially being punished for things they "might" do in the future.

In the case-at-bar, the sentence of probation or a short prison sentence is more than sufficient to address punishment.

And registering as a sex offender also causes collateral consequences more than other offenders who are restricted to where a defendant could live, work, or even whether he could visit certain family members.

Defendant would be closely monitored on probation and her freedom greatly restricted.

The U.S. Probation Office utilizes myriad tools to protect the community, including search and seizure of the offenders' residences, computers and phones, restrictions on computer use, and compliance with treatment.

Since defendant would be required to register as a sex offender, local law enforcement would be alerted to monitor his actions closely, which would be focusing more on counseling, treatment, prevention, monitoring, and supervision—and less on imprisonment.

## VII.

### DEFENDANT COULD BE SUBJECT TO MISTREATMENT

### WHILE IN CUSTODY

Imprisonment for any sex offender carries a substantial risk that such offenders will be brutalized in prison or worse. *US vs. Kelly*, 868 F.Supp.2d 1202 (D. Ct. NM, June 2012).

A downward variance maybe warranted because of the unusual susceptibility to abuse in prison child pornography offenders face, but also because prison may exacerbate their conduct. *U.S. v. Marshall*, 870 F.Supp.2d 489 (N.D. OH, June 2012).

9

If incarcerated, Defendant would not be eligible for placement in a minimum security "camp" type facility. As a result, she will be confined with other inmates who are ineligible for minimum security placement, and may include those with significant criminal histories and histories of violence or escape.

Inmates in general facility populations typically do not well tolerate sex offenders, particularly when those offenses include children. Should the nature of her offense become known, Bowman will be at greater risk of efforts by other inmates to have her removed from the general population through overt or veiled threats. While assault or other physical confrontation is possible in the form of threats with the objective of causing her to seek protective custody.

Should Bowman discern the need for protection, she will be placed the administrative detention section of the institution special housing unit, essentially a jail within the prison. While there, staff will attempt to determine whether a real threat to her safety exists or not. If not, she would be ordered to return to the general population, and if she refuses, disciplinary action which may result in the loss of "good time" and privileges will follow. After a substantial period of time in this status, usually 6-9 months, she may be referred for transfer to another BOP facility of the same or higher security level. If approved, she will be placed in the general population of the facility to which she is transferred.

If a verified threat to her safety is determined, she will be referred for transfer to another BOP facility of the same security level and placed in the general population of that facility.

Unfortunately, when an inmate is transferred under these conditions, the same scenario often repeats in the new facility and the process begins again.

After several attempts at placement in different inmate populations, the BOP may determine that Bowman requires placement in a Sex Offender Management Program (SOMP).

There are seven of these units throughout the Bureau of Prisons with limited bed space. If place in a SOMP, Defendant will be housed with other sex offenders and should experience some greater degree of safety. Once placed in a SOMP, it is extremely difficult to transfer to another general population facility.

Both residential and non-residential sex offender treatment programs are offered in the Bureau of Prisons. The non-residential programs are available in those facilities that include a SOMP. The residential programs are available at two facilities, and are generally limited to the last 2 years of an inmate's term of incarceration, as it is expected that she will be released form the treatment program at the end of her sentence. All sex offender treatment programs are voluntary. BOP inmates who are sex offenders are frequently reluctant to enter treatment while incarcerated based on their concern that any information or evaluations generated during that treatment may be included in determining whether civil commitment procedures will be initiated at the end of their sentences. While the rate of such commitments is quite low, the concern remains an inhibiting factor for inmates in BOP custody.

It is not possible to determine certainly whether Defendant will be able to function in general population. The probability of success may be increased with age (older inmates may be better tolerated), physical stature, skill in managing interpersonal communication with other inmates, the ability to refrain from revealing the nature of the offense, and the sophistication of the inmate in dealing with other inmates or threats.

## VIII.

## THE COURT MAY MAKE AN INDIVIDUALIZED ASSESSMENT AND GRANT PROBATION.

11

In *Gall v. U.S.,* 128 S. Ct. 586 (2007), the court in an opinion by Justice Stevens joined by Roberts, Scalia, Kennedy, Souter, Ginsburg and Breyer, considered a case involving a 100 percent downward variation from the guidelines in which the Eighth Circuit reasoned should be justified by "extraordinary circumstances". The Gall decision assisted lower federal courts in how to handle sentences falling outside the guidelines range.

The Booker court relied on *U.S. v. Booker*, 543 U.S. 220 (2005) that the federal sentencing guidelines are merely one of the seven (7) factors federal district courts must look to when imposing sentences and federal appellate courts must review those sentences for "reasonableness". The guidelines are one factor, among many, and remain the product of thousands of studies of cases over 25 years, but there is on "rigid mathematical formula" that dictates the precise extent of departures.

The court departed downward from what otherwise would have been a recommended sentence of 37 months to mere probation. The U.S. Supreme Court held the sentence to be "substantially reasonable" and that such a vast variance or downward departure "might sometimes be appropriate".

The case ruled the "abuse of discretion review" could not stand and instead opted for a "substantially reasonable" approach to "consult" the guidelines and "take them into account". The Courts should make a "individualized assessment" of the facts and consider the extent of a "deviation and insure that the justification is sufficiently compelling to support the degree of the variance".

Under 18 U.S.C. §3553(a) the factors regarding a need for a sentence to be imposed include (1) reflecting the seriousness of the offense to promote respect for the law and just punishment: (2) to afford adequate deterrents to criminal conduct; (3) to protect the public from

12

further crimes; (4) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.

In *Koon v. U.S.,* 518 U.S. 81, 126:

> A sentence of imprisonment may work to promote not respect, but
> Derision, of the law if the law is viewed as merely a means to dispense
> Harsh punishment without taking into account the real conduct and
> Circumstances involved in sentencing.

## IX.

### DEFENDANT BOWMAN IS NOT A THREAT TO SOCIETY

Proposed changes in the Federal Sentencing Guidelines should focus less on the rote number of images and more on actual conduct. Studies recommend the guidelines should be modified to reflect a lower base offense.

Child pornography offenders are punished far beyond incarceration. They suffer more collateral consequences than other offenders such as being restricted to where they can live, work and even whether they can visit family members for the rest of their lives.

Defendant has no prior history of harming or touching children and has zero criminal history.

The best empirical research shows that the vast majority of such offenders do not go on to molest children.[12] Seventy-two (72) individuals were followed for four (4) years after they were charged with or convicted with child pornography plus another 231 child pornographer offenders

---

[12] Dr. Richard Wollert, USSC Public Hearing, February 15, 2012; also see "*The Implications of Recidivisms Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders: Public Hearing on Child Pornography Offenses Before the U.S. Sentencing Commission*, February 15, 2012; (the 27 page report is attached hereto), (Exhibit Two) (27 pages).

13

were followed for six (6) years after their initial offense without any prior contact offenses. Only two (2) of these individuals (0.8 %) committed a contact offense.[13]

The typical child pornographer is a first-time offender with no history of harming or touching children. The best empirical research shows that the vast majority of these offenders do not go on to molest children.[14]

In a recent study, Dr. Richard Wollert followed 231 child pornography offenders without prior contact offenses for six years after their initial offense. Only two of these people (0.8%) committed a contact offense.[15] (See attached Exhibit One)

But, the average sentence length for first-time child pornography offenders is now over three times what it was for both full-time and recidivist offenses in 1994. The average guideline sentence for possession currently is 119 months or nearly ten years.[16]

Defendant is of a category of offenders that are unlikely to reoffend.[17]

There have been numerous increases in guidelines for child pornography offenses and as a result the average sentence for first time child pornography offenses is over three times what it was for offenders in 1994.[18]

## X.

## THE GUIDELINES ARE UNREASONABLE AS IT RELATES TO THE

## DEFENDANT BOWMAN

---

[13] *Nine BNC Psychiatry 43*, Jerome Endrass etal (2009)
[14] Dr. Richard Wollert, Ph.D, Public Hearing Before the USSC, Feb. 15, 2012; See the Implications of Recidivism Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders.
[15] Jerome Endrass, et al., The Consumption of Internet Child Pornography and Violent and Sex Offending, 9BMC Psychiatry 443 (2009).
[16] U.S. Sentencing Commission, 2011 Source Book on Federal Sentencing Statistics (tdl. 13).
[17] Synopsis of The Sentencing Project (and the actual report) are attached.
[18] US Sentencing Commission, *2011 Source Book of Federal Sentencing Statistics*, (TBL.13)

Much like some drug guidelines, formulated by directives from Congress rather than by empirical data, sentencing courts are questioning the reasonableness of child pornography guidelines. The guidelines for instance, do not distinguish <u>differing levels of culpability</u>. And nearly all the enhancements apply to all child pornography offenders. Nearly all use a computer, (involved in interstate commerce) nearly all have at least one image of a minor under the age of 12, most images reflect violence, (intercourse with a minor) and do the file sharing programs most possess more than 600 images, intentionally or unintentionally.[19]

Enhancements combine to reflect an effective base level of 43 with a range of a sentence of 1200 months.

Even after a downward departure or variance, the resulting sentence could still be far too onerous and otherwise inconsistent with the principal of parsimony, <u>18 USC Sec. 3553 (a)</u>.

It is the degree of the variance and not the variance per se that is relevant for purposes of <u>18 USC Sec. 3553 (a).</u>

In Group I, paragraphs 16, 17, and 19 combine for a total of eight (8) points and constitutes double counting, for a parent committing a sexual act with a minor child.

In Group II, paragraph 37, enhancement of five points is double counting in that a defendant engaged in a pattern of activity. Paragraphs 25, 26 and 28 involve sexual act by a parent with child under 12 adding a total of <u>eight</u> (8) points.

Paragraph 25 adds four (4) points under 262.1(b)(1)(A) for a minor under 12, the same a paragraph 16, and is double counting.

## XI.

### THE COURT IS REQUESTED TO DEPART DOWNWARD

---

[19] U.S. Sentencing Commission, *The History of the Child Pornography Guidelines* (2009). (Partial and selected quotes from this voluminous study are attached hereto).

15

Many courts do not follow the guidelines in child pornography cases. The survey conducted by the USSC from January 2010 to March 2010 disclosed that 70% of the judges opined that the guidelines for possession of child pornography were too high.[20]

Many federal judges do not follow the guidelines in child pornography cases. The survey conducted by the USSC from January 2010 to March 2010 disclosed that 70% of the judges opined that the guidelines for possession of child pornography were too high.[21]

The sentences imposed reflect growing displeasure with the guidelines. One quarterly report in 2012 reflects that judge impose sentences below the guidelines 45% of the time.

It is apparent that federal courts are not following the guidelines in child pornography cases. A survey from January 2010 to March 2010 revealed that 70% opined that the guidelines for possession of child porn were too high (See *U.S. Sentencing Commission Results of Survey of United District Judges January 2010-March 2010* available at http://tinyurl.com/7uz7wob.

These sentences imposed reflect growing displeasure with the guidelines. The first quarter report in 2012 reflects that judges impose sentences below the guidelines 46% of the time in 2011 (available at http://tinyurl.com/cevaxeg).

With only about one-third of child porn offenders sentenced with the guidelines, when compared to other major offenses categories, the judiciary practices what it has been preaching, i.e. that the guidelines are too onerous.

---

[20] US Sentencing Commission, *Results of Survey of United States District Judges* (2010). (Available at http://tinyurl.com/"7uz7wob.) (Exhibit Five)

[21] US Sentencing Commission, *Results of Survey of United States District Judges* (2010). (Available at http://tinyurl.com/"7uz7wob.) (Exhibit Five)

Nongovernment-sponsored below-guideline sentences imposed for child porn offenses consistently have the highest rate of variance for the bottom of the otherwise applicable guideline range, but also to such a degree of variance that are also increasing.[22]

Although some sex offenders could receive a lifetime of supervised release, USSG §5D1.2(b) it is not required by law and the length of supervised release should be tailored to the characteristics of the defendant.

A public hearing with invited guests was conducted in February, 2012, concerning penalties of child pornography offenses. There was a three-year review of the issue and the report was released by the end of 2012. (See attached Exhibit Three) (eight pages) (Condensed version but actual quotes).

The proposed changes are focusing less on the number of images and more on actual conduct.

Possessors are essentially being punished for things they "might" do in the future, but there is no direct link to possessing pornography and actual risk of harm to children.

In the case-at-bar, the sentence of probation or a short prison sentence is more than sufficient to address punishment.

And registering as a sex offender also causes collateral consequences more than other offenders who are restricted to where a defendant could live, work, or even whether he could visit certain family members.

## XII.

## DEFENDANT WOULD BE SUBJECT TO MISTREATMENT

## WHILE IN CUSTODY

---

[22] By Tess Lopez, Mark H. Allenbaugh, Alan Ellis, "Trends and Practice Tips for Representing Child Pornography Offenders at Sentencing," *Criminal Justice*, Vol. 27, No. 3 (Fall 2012), American Bar Association.

17

Imprisonment for any sex offender carries a substantial risk that such offenders will be brutalized in prison or worse. *US vs. Kelly*, 11-1866, DNM (June 20, 2012).

A downward variance maybe warranted because of the unusual susceptibility to abuse in prison child pornography offenders face, but also because prison may exacerbate their conduct.[23] *U.S. v. Marshall*, (N.D. Ohio, June 29, 2012)

## CONCLUSION

WHEREFORE, for every one of the above stated reasons and in combination of all of the factors, defendant respectfully requests a downward departure, or a variance herein or probation, and for such other and further relief as the Court deems just and proper.

\_\_\_\_/s/Dee Wampler_____
DEE WAMPLER, MO Bar #19046
JOSEPH S. PASSANISE, MO Bar #46119
SCOTT B. PIERSON, MO Bar #64083
Attorneys for Defendant

LAW OFFICES OF DEE WAMPLER &
JOSEPH PASSANISE
Attorneys at Law
2974 E. Battlefield
Springfield, MO 65804
PH: (417)882-9300
FAX: (417)882-9310

### Certificate of Service

I hereby certify that on June 4th, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to U.S. Attorney, Springfield, Missouri.

_____/s/Dee Wampler_____
Dee Wampler
Joseph S. Passanise
Scott B. Pierson
Attorneys at Law

---

[23] The attached affidavit from Dr. Philip S. Wise should be considered regarding this conclusion.

18

Case 6:12-cr-03114-DGK   Document 62   Filed 06/04/15   Page 18 of 18