**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    Plaintiff,

**vs.**

**MEAGAN N. BOWMAN,**

    Defendant.

**Case No: 12-03114-01-CR-S-DGK**

## GOVERNMENT'S SENTENCING MEMORANDUM

**I.    INTRODUCTION**

Defendant Meagan N. Bowman, is scheduled to be sentenced on September 14, 2015, for two counts of sexual exploitation of a child pursuant to Title 18, United States Code, Section 2251(a) and (e), and two counts of receiving child pornography pursuant to Title 18, United States Code, Section 2252(a)(2) and (b)(1). The United States submits this memorandum to set forth its position regarding the appropriate factors to be considered by this Honorable Court in formulating the defendant's sentence. For reasons set forth below, the United States respectfully requests that this Honorable Court impose a sentence of 600 months (50 years) to be served in the custody of the Bureau of Prisons.

**II.    BACKGROUND**

On May 20, 2012, Skylar Yanatovic accessed the email account of his estranged wife, Meagan Nell Bowman, the defendant. Yanatovic discovered photographs depicting what appeared to be the defendant licking the vagina of a young female. Later the same

day, Yanatovic confronted the defendant about the photograph and advised her to contact law enforcement. Yanatovic drove the defendant to the Nixa Police Department.

After being provided her *Miranda* rights, the defendant advised the Nixa Police Department that she had manufactured pornographic images of her minor daughter. At the time the images were taken, the defendant's daughter was three years old. The defendant admitted that she was talking with two men over the Internet, she then took photos of herself sexually abusing her child, and then distributed the images to them over the Internet. When asked, the defendant ultimately admitted that she had sexually abused her son and taken photographs of those incidents as well. The defendant's son was two years old when those photographs were created. In subsequent interviews with law enforcement, the defendant admitted to stroking her son's penis to see if he could have an erection and licking her daughter's vagina to both give and get sexual gratification.

Ultimately, the defendant admitted to sexually abusing her two young children, taking photographs of those incidents, and sending them to two unknown men that she contacted via Craigslist. The defendant acknowledged the thirty-two (32) images of child pornography on her cell phone were created by herself or received from the men she was interacting with over the internet. Finally, the defendant claimed that she had sexually abused her two young children and took photographs of the abuse because the men asked her to do so, and she wanted them to continue to pay attention to her.

The defendant entered a guilty plea on December 11, 2014. As a result of the defendant's guilty plea to 18 U.S.C §§ 2251(a) and (c), and §§ 2252(a)(2) and (b)(1), her statutory sentence for the first two counts is not less than 180 months and not more than

360 months for each count; for the latter two counts, her statutory sentence is not less than 60 months and not more than 240 months for each count. There is not a plea agreement. Based on the defendant's criminal history of "I" a total offense level of 43, the guideline range is life within Zone D of the Sentencing Table. The Government respectfully recommends a sentence of 600 months to be served in the custody of the Bureau of Prisons. Based on the facts set out below, the Government requests that the defendant's request for a further downward variance be denied. Furthermore, the Government would request that its recommendations for a sentence of incarceration be adopted by this Honorable Court as appropriate in light of the sentencing factors set forth in 18 U.S.C. § 3553(a), and the facts set out below.

## ARGUMENT

The defendant requests that this Court vary downward from the applicable sentencing guidelines. The defendant does not specify a particular sentence or sentencing range she believes is appropriate for her crimes. The defendant does make passing reference to utilizing a state sentencing structure and to a probationary sentence. In response to these statements, the Government would argue that the defendant's request is not only wholly inappropriate given the nature of her heinous crimes, but also illegal given that all four charges to which she pled guilty have minimum mandatory sentences that require periods of incarceration. The Government respectfully submits that there is absolutely no basis for a substantial downward variance given the unspeakable and enduring harm she caused. Thus, it is essential to consider the statutory sentencing

factors pursuant to 18 U.S.C. § 3553(a) when determining an appropriate sentence for this particular defendant.

## I. FORMULATION OF THE DEFENDANT'S SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional demands. *Id* at 258. While this Court is not bound to impose a sentence based solely on the Guidelines, the Court "nevertheless must consult the Guidelines to calculate a defendant's sentence because the Guidelines are the critical starting point for fashioning a reasonable sentence under the statutory sentencing factors." *See United States v. Gregg*, 467 F.3d 1126, 1128-29 (8th Cir. 2006). Pursuant to the Sentencing Guidelines, the Court "shall determine the kinds of sentencing and the guideline range as set forth in the guidelines by applying the provisions of this manual. . ." *See* U.S.S.G. §§ 1B1.1(a) and (b). After considering the Sentencing Guidelines, the Court "shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." *See* U.S.S.G. § 1B1.1(c) and 18 U.S.C. § 3553(a).

After making that determination, the District Court, utilizing the § 3553(a) sentencing factors, . . . can impose a more severe or more lenient sentence, as long as it is reasonable. *Id.* The § 3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the

4

> Sentencing Guidelines]; . . .(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

## II. THE COURT SHOULD NOT VARY FROM THE GUIDELINE RANGE

Upon correctly calculating the Guideline range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of a sentencing set forth in 18 U.S.C. § 3553(a). As explained below, the Government believes that a sentence of 600 months of incarceration would achieve the purposes set forth in Section 3553(a).

### A. Nature and Circumstances of the Offense

The recommended sentence of 600 months appropriately reflects "[t]he nature and circumstances of the offense and the history of the defendant." *See* 18 U.S.C. § 3553(a)(1). In this case, the defendant took sexually explicit photos of her three year old daughter and two year old son. She used her cellular phone to send these photos to men she met online. Furthermore, the defendant admitted to having sexual fantasies about her daughter. However, reality surpassed fantasy, as on several occasions, the defendant licked and touched her three year old daughter's vagina to get and give sexual gratification. The defendant also admitted to stroking her two year old son's penis in order to make it erect, as well as, at least once, placing her son's penis in her mouth.

These incidents were photographed by the defendant, intentionally shared online with two men, and have likely been redistributed to others over the Internet. In return,

5

these men also sent the defendant child pornography as she has expressed a desire to engage in sex with children. The defendant has admitted that she is easily persuaded by men, and that in order to gain their attention, she began communicating online with two men who expressed their interest in sex with children. As a result, she staged and took multiple sexually explicit photos of her young children. Such actions are not associated with peer pressure, but are directly attributable to a mother who put her children in harm's way to fulfill her own needs and desires. In fact, the defendant admitted to posting a Craigslist advertisement to meet men and when a man responded to the ad, she told him she had a fantasy involving her three year old daughter. She then sent the man a photo of herself licking her daughter's vagina.

The aforementioned actions are powerful evidence that the defendant was not just a passive or reactive participant to the perverted demands of others. This defendant actively sought out these encounters when she posted Craigslist advertisements. Further, when the defendant solicited others of similar deviant ilk, she then exploited her own children to advance hers and their demented fantasies. Thus, given the circumstances associated with this case, a sentence of 600 months is entirely reasonable and falls below the sentencing guideline range.

### B. Seriousness of the Offense

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). Such considerations reflect the notion of just desserts, which

carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly.

In this case, the seriousness of the defendant's crimes is reflected in the actions described above, as well as the Criminal Code and the Sentencing Guidelines. The defendant's sexual exploitation of a child subjects her to a minimum 15 year prison sentence and a maximum 30 year prison sentence for each count. *See* 18 U.S.C. § 2251. Combined with the other factors at play in this case, the defendant faces life in prison. As such, the defendant is ineligible for probation because such a sentence is expressly precluded by statute. *See* 19 U.S.C. § 3561(a)(2) and U.S.S.G. §5B1.1(b)(2). In addition, double jeopardy does not apply to this case, as the defendant still has not been convicted or acquitted of the same charges related to this offense in Christian County. *See Ohio v. Johnson*, 467 U.S. 493 (1984).

Furthermore, the defendant's claim that she suffers from diminished capacity is unsubstantiated. The disorders and negative personality traits cited by the defendant do not warrant a downward departure for diminished capacity. In *U.S. v. McCart*, 377 F.3d 874, 878 (8th Cir. 2004), the Court held that a diagnosis of depression is insufficient to support a finding of diminished capacity. In *McCart*, the consulting doctor found the defendant to be vulnerable, hopeless and desperate leading up to his arrest for intent to engage in a sexual act with a minor. *Id.* However, the Court pointed out that these conditions did not impair the defendant's ability to understand the wrongfulness of his behavior or his ability to control behavior he knew was wrong. *Id.* Similarly, the defendant in this case has also been diagnosed with, *inter alia*, Major Depressive

7

Disorder, and is described by consulting doctors as helpless, easily manipulated, and dependent. However, both Dr. Franks and Dr. Darrow concluded that the defendant is able to understand the severity of her actions and these proceedings. In fact, the defendant told Dr. Franks that she is "disgusted and heartbroken" over her actions and that she knows that she could be "incarcerated for 40 years in a federal prison." Furthermore, the defendant recognized that her behavior was "inappropriate" and "wrong" but she continued to sexually exploit her children for at least two months until she was confronted by her husband and compelled to turn herself in to the police. As the Court pointed out in *McCart*, because the defendant realized that her conduct was wrongful, she is not entitled to a downward departure for diminished capacity.

While the Sentencing Guidelines call for an additional increase in the defendant's Guidelines range because the defendant was a parent of the victims and the offense involved the commission of sexual acts that were then distributed to others, the defendant's actions extend far beyond those aggravating factors. In addition to sexually exploiting her very young children and documenting it through photographs, the defendant proceeded to share those images with at least two other individuals. This defendant is a mother who was entrusted with the care of her two young, dependent children. But rather than protecting and caring for them, the defendant abused this privilege by exploiting her children for nothing more than her own personal desire to obtain and maintain the attention of other depraved and deviant individuals. Given the seriousness of the defendant's actions, a 600 month sentence is wholly reasonable and entirely justified.

### C. Need to Afford Adequate Deterrence to Criminal Conduct

A 600 month sentence would also "afford adequate deterrence to criminal conduct" and would "protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(B)-(C). The Government would argue that the more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others from engaging in similar horrific crimes. In this case, the defendant's sexual exploitation of the victims occurred over an extended period of time, and she was the sole perpetrator of this crime. While it is difficult to determine an adequate sentence that would provide sufficient general deterrence to others from committing similar offenses, the crucial question in this case is: What will it take to deter this defendant both now, and in the future?

The defendant argues that she is not a threat to society because as a first-time offender, she is not likely to reoffend. However, the defendant's pliable nature and the vulnerability of the victims suggest that the risk that the defendant will in fact again use children for her personal pleasure is not one that society or the defendant's children should have to bear. The defendant's history and psychological analysis shows that she is easily persuaded by the promise of male attention, even to the point of blatantly disregarding the safety and health of her young children.

A 600 month sentence will specifically deter this defendant from committing additional crimes for approximately the next 50 years. Furthermore, while there is no guarantee that any sentence will deter the defendant in the future, a 600 month sentence will send the clear and unmistakable message to this defendant and all others that if one

9

commits such brazen and horrendous crimes, the result will be a very substantial period of incarceration. In fact, a sentence of 600 months sends an unmistakable message about the consequences for committing such terrible acts. The 600 month sentence recommended by the Government is actually below the Guidelines range and but still reflects the kinds of sentences and the sentencing range established by the Sentencing Commission in its Guidelines and policy statements. *See* 18 U.S.C. § 3553(a)(4)-(5).

### D. Need to Avoid Unwarranted Disparities

A sentence of 600 months would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This section focuses on *unwarranted* disparities among *similarly-situated* federal defendants. From the outset, a correct calculation of the Guidelines range protects against unwarranted disparities among similarly situated defendants. *See Gall*, 552 U.S. 38, 55 ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"). Furthermore, even though the defendant argues that she suffers from multiple mental conditions that require "supervision and treatment" instead of incarceration, her circumstances do not differ from many other similarly situated defendants who claim to suffer from a variety of afflications and mental disorders. As the defendant outlined in her motion, there are multiple programs within the Bureau of Prisons, such as the Sex Offender Management Program, which offer inmates treatment and medical aid.

The defendant also makes multiple public policy arguments as to why the Court should depart from the Guidelines. In particular, the defendant focuses on child

10

pornography cases where the courts depart from the Guideline range. Regardless of how the defendant frames the U.S. Sentencing Commission statistics from 2011, more recent data continues to show that in a majority of the cases, courts do choose to impose sentences within the Guidelines. For example, in 2014, the U.S. Sentencing Commission reported that although courts gave sentences below the Guidelines range in 38.9 percent of child pornography cases, as supported by *United States v. Booker*, 543 U.S. 220 (2005), in just as many cases the court gave sentences within the guideline range.[1] In the remaining bulk of cases, courts worked with government-sponsored deviations. Contrary to this defendant's arguments, these statistics show that courts do in fact make individualized assessments, while at the same time adhering to the Guidelines.

As additional evidence of the fallacy of the defendant's argument that a significant downward variance is warranted to avoid unwarranted disparities between similarly situated individuals, the Government would address the June 25, 2015 sentencing in *United States vs. Ronald James Mazza, 14-03006-01-CR-S-MDH*. In *Mazza*, the defendant was sentenced to 600 months incarceration by the Court after entering a guilty plea to two counts of sexual exploitation and one count of receipt and distribution of child pornography. Mazza was the father of a five year old girl and a three year old boy. The defendant sexually abused both children, took photographs of the abuse, and then distributed the images to others over the Internet. Mazza attempted to rely on a report submitted by Dr. Kenneth Franks which concluded that the defendant suffered from

---

[1] U.S. Sentencing Commission, Preliminary Quarterly Data Report, (2015) *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2015_1st_Quarterly_Report.pdf

11

pedophilia, a depressive disorder, a personality disorder with borderline and narcissistic features, and clinical depression. Mazza claimed that because of his mental disorders and previous abuse he suffered as a child, he was prone to victimize children left in his care. The sentencing court recognized the extreme danger that the defendant presented, the horrendous nature of his crimes as a parent and individual, and the need to impart a sentence that would specifically deter him and all others from committing similar acts.

The defendant in the instant case is also a parent to the victims. She also sexually abused her children, who were even younger than those in *Mazza*, photographed the sexual abuse for others, and claimed sexual satisfaction from her acts of abuse. Further, both Mazza and the present defendant made nearly identical mental health claims. Like the underlying offense, the defendant's characteristics, history, and nearly every § 3553 factor are identical to those in *Mazza*. *Mazza* shows that similarly situated defendants have been sentenced to similar lengths of incarceration. Thus, the defendant's argument that similarly situated defendants warrant a massive downward variance is entirely misplaced and simply incorrect. Thus, while a 600 sentence month falls below the Guidelines range, such a sentence is in keeping with others recently sentenced and would satisfy the conditions set forth pursuant to Section 3553(a)(6).

## V. CONCLUSIONS

18 U.S.C. § 3553 requires this Honorable Court to impose a sentence that considers a variety of factors including the advisory guidelines range. The Government respectfully requests that all of the aspects of this defendant's behavior and conduct, as

12

well as the facts and circumstances surrounding her blatant sexual exploitation of her own children be considered in directing an appropriate criminal sentence.

Undersigned counsel respectfully submits that this defendant perpetrated particularly horrendous crimes against her own children. The severity of the defendant's crimes simply cannot be overstated. The defendant sexually victimized two children under the age of four. These egregious crimes were further aggravated by the fact that she not only took photographs of herself victimizing her own children, but transmitted the resulting images to others. These images of sexual abuse perpetrated by the defendant will, in all likelihood, remain in circulation for the rest of the victims' lives. The defendant also collected images of child pornography from the others she met on the Internet. The impact that the defendant has had upon the lives of these innocent children and those depicted within the child pornography discovered on her cell phone is nothing short of monstrous.

In sum, upon considering this defendant's criminal behavior, the severity of her criminal conduct, the impact of this sentence on both specific and general deterrence, and the need to avoid unwarranted sentencing disparities, the Government would respectfully request that this Honorable Court impose a sentence of 600 months incarceration with the Bureau of Prisons. Such a sentence would be in keeping and consistent with all of the

aggravating circumstances of this case, including the defendant's abuse of her position as the mother and guardian of her two young children.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney


*/s/ Patrick Carney*
PATRICK CARNEY
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri  65806
(417) 831-4406

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of August, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Patrick Carney*
PATRICK CARNEY

14